Our next case for argument is United States v. Zeller. Mr. Hillis. May it please the Court, Counsel, my name is Daniel Hillis, and I represent Mr. Whipp, Mr. Zeller. In this case, the District Court errantly imposed a five-level enhancement under Section 4A.1.5b. That enhancement applies when there is reliable evidence of a pattern of activity involving prohibited sexual conduct. That enhancement in this case raised my client's range from what would have been 188 to 235 months up to 324 to 405. So it's an enormous concern here that we have that this hasn't been done right, and we don't think that it was. The government, of course, bears the burden of proving an enhancement by a preponderance of the evidence, and it has to offer reliable evidence to support its position. The District Court must determine that the evidence is sufficiently reliable before it can rely on it to impose the sentence. So the reliability is really the crux of this, and here we have a situation that is very much akin to Helding, where by including the information that's adverse to my client in a PSR, is that sufficient to say that the evidence is then reliable such that it can be used by the District Court to fashion the sentence? Helding said no, and I recognize that Helding's a drug case, but the principle is the same. If you have statements by witnesses that are then included in the PSR, and there is a dispute about the reliability of those statements, that switches then the government into a new mode where it has a production burden and it has to come in with evidence to establish the reliability of the information that it wants the District Court to use to impose the sentence. The District Court did not assess the information that the government tendered, because the government tendered information that once the burden shifted to it under Moreno-Fadilla, it offered no new evidence. I should be clear on that. But rather, it relied on the things that it had been relying on right along. Police officer affidavits, sworn officer statements, things that were in police officers' reports. We have concerns about those, and I think rightfully so, given what this court said in United States v. Jordan, where it cited the Downey v. Klinkar case, talking about police officers' reports being advocacy pieces that are written by officers in support of charging decisions, in support of the government's ultimate efforts to prosecute individuals. Those statements here are one of our concerns, but in particular, there's no individualized assessment by the District Court of the reports. The reports are just parroting what the alleged victim said. So we've got a double hearsay problem, no determination about reliability, because ultimately, although the witnesses are available to the government, there's no concern they have about presenting these witnesses. These witnesses aren't unavailable. The government has their names, addresses. They're willing to testify at trial, which is a more arduous experience, but they're not bringing them in to testify at the sentencing. They may speak to their comfort level, the government's comfort level, in proposing these witnesses for cross-examination and things, but the government just doesn't do it. Mr. Lewis, is there something shy of bringing the witnesses in that, in your view, would constitute information sufficiently reliable for the District Court to rely on for each of these? I guess it's really two out of the three issues here. We're talking about the loot assault, the battery, and then the chatbot issue. The chatbot, I'll put it in a different category, because there's real problems with that, given my client does not ask for anything that is pornographic. He asks for a picture, a picture comes. We don't even have that included as a basis for this enhancement, Judge. That's why I said two out of the three. Yeah, I agree with that. But short of bringing in the witnesses, is there something the government could do? Absolutely, in the right case. In a case where we have medical evidence, consider a rape victim. We're going to have medical evidence. If the medical evidence links and establishes more than a he said, she said situation, then absolutely, you're going to bring in the medical evidence. If you have corroborating witnesses, bring those in, or else get statements. Do things that you can do to assure the District Court that we are beyond this equipoise of competing statements by an alleged victim and an alleged assailant. That's what has to be done here. And under Moreno-Padilla, the government should have done this, and it chose not to. Otherwise, what more can my client do? So the government says this is a bare denial case. This is what we have happen sometimes, where there is a bare assertion under must read and marks. There's nothing more that my client can or should have to do because that sort of inclusion in the PSR that simply refers to there were these allegations can't be met with anything more than my client's bare denial because my client doesn't have the ability to get medical information, to get other things, to corroborate his position. And that would force the burden upon my client when the burden always remains with the government in this situation. So this is an issue that has a greater reach than this case. And if the government wishes to have the enhancement, it must meet its burden, and it has to come in with the necessary evidence. The evidence that it brought was inadequate. The police reports cannot be credited. They weren't even assessed by the District Court. So that is a problem. We are in de novo review because this is a procedural error about what the District Court was supposed to do, and it didn't. With the lewd assault, we have the interesting fact that there is deposition testimony in that underlying state case. What's your position on that? Is that even though that's sworn testimony of the victim, it is still a he said, she said? Or is your position at all related to the fact that there was an acquittal in that case? Tell me more. So if there's an acquittal in the case, I would hope that the judge is examining very closely what caused 12 jurors to not reach a guilty verdict. That should be accounted for in any analysis. So far as the deposition transcript goes, we, again, don't have any more information than we would have had at trial. The case apparently was weak in the eyes of the jurors. I don't see how that I got stronger. I understand there's a preponderance of the evidence standard, but what factors did the District Court pluck out from the deposition transcript? Why didn't it look at the trial transcript? What did it do to assure itself that the information that was now for its consideration at sentencing got to be more reliable? There's nothing. There's a gap, and that's the problem. The District Court should have assessed the reliability, and Judge Jackson told me if the information was in there, I would think the government would have presented it. The District Court would have relied upon it. Those things didn't happen. Cupboard's bare. So the victim impact letter, since I think that's about the last thing that we haven't touched on by way of the information that was presented by the government, is itself another example of deficiency because victims suffer lasting consequences of things, and it's fair to talk about them in victim impact. That is the forum, the opportunity to do it, but this impact letter doesn't describe any of the events of the preceding decade plus. So how can we credit this to assess reliability of anything? We have reports from officers, not statements from the victims back in those cases that are independent, that offer details. We have an impact letter that comes in later. It's without details. These are the things that don't add to a reliability assessment. This was one. Our overarching concern is there was bare information. It required only a bare denial, and then it triggered the obligation by the government to produce evidence to support its position to get the enhancement, and it triggered also an obligation by the District Court to assess the information and make a reliability determination, and these things are all subject to de novo review, and we think that there should be a remand given the deficiencies. Thank you. Thank you, Counsel. Ms. Burns. Good morning, Your Honors. Good morning. May it please the Court. Allie Burns, appearing on behalf of the United States. The District Court did not err in imposing this guideline enhancement in this case, and that was based on four separate occasions of prohibited sexual conduct in addition to the underlying federal conviction that created the pattern of behavior. I think in addressing each of these, I want to address, walk through each one separately and specifically note that the Court's finding of just one of these in addition to the underlying federal conviction is enough to apply the enhancement. So it's not all of them, but it's just a single one of these. And starting first with the text messages with the 16-year-old that were found in Mr. Zeller's phone from 2019, I think starting with Mr. Zeller's actual objection to that evidence, his objection was that there were no charges that were filed from that incident and that he claimed the 16-year-old was a chat bot. He advanced no evidence or testimony in support of that claim. And I would note that in the reply brief, Mr. Zeller advances this idea that because the actual messages were under the offense, not part of relevant conduct heading, therefore it can't be used to enhance the PSR or the guidelines in the PSR, except that is a misstatement. It is actually referenced within the guideline calculation as well. That's in paragraph 27 of the PSR, and it's also incorporated in the addendum to the PSR. So I think that's absolutely appropriate to rely on and clear from the sentencing transcript that the Court did. This bare denial of claiming this was a chat bot that the defendant needed to provide some evidence, while it may not be a large burden but something, I think just didn't happen here. He made this blanket statement. The Court actually engaged in trying to get him to provide more as to this claim, and he simply couldn't. I also think that the claim that that instance can't qualify for this enhancement is mistaken because, again, within the record, it's the actual text messages. He specifically asks for genital images, specifically comments on the image he receives in response to his request, and that is clearly attempted production of child pornography based on the context of the conversation. And, again, the Court engages in this conversation with him. If you believe it's a chat bot, why did you send images to this person? If you believe it's a chat bot, why did you continue to ask for images of this minor that were sexual in nature? So I think that instance alone supports this enhancement. In looking at the sexual abuse of KG, that is the case in which he pled guilty to an amended battery charge. Again, Zeller's objection was not just this broad objection of it didn't happen. His objection specifically, and this is in his filed objection 192, as well as in the sentencing transcript on page 31, that he was not convicted of a sex crime, period. That was his objection. As we know, that's not the basis. If you're not convicted of a sex crime, this guideline enhancement can still apply. And he never objected to KG specifically, to credibility of the evidence saying it didn't happen or anything like that. So I think the Court was appropriate to rely what was included in the PSR in this case, which was talking about the fact that he pled guilty to a battery of conduct between him and KG, summarized the police reports that talked about the sexual conduct occurred. Now, even if the Court finds that that was not a bare denial, which I think the record shows it is, but even if the burden had shifted, the government did present additional evidence to corroborate this to the Court, and that was the actual conviction itself. We're talking about police reports, but there was more than police reports provided to the Court. So there was a notarized and sworn affidavit from the investigating agent summarizing the evidence. There was a minor witness deposition submitted where that witness talks about corroboration of these charges and what occurred, talks about the defendant's admissions about having sexual contact with KG, and then, of course, the summary of the police report within the PSR. This goes well beyond than just a kind of basic claim of a battery. You're kind of expanding the list of items because you talked about the police report and then you talked about the summary of the police report in the PSR. That's one and the same. Sure. The sworn affidavit, an affidavit establishes at most a fair probability that the defendant committed a crime. It goes hand-in-hand with the police report. Then we have the witness, the deposed witness testimony. So I would like you to respond to Mr. Hillis' assertion that when we look at all this, we've got Jordan, which says we can't rely on police reports alone, which is three of the four things you mentioned, basically. And then outside of that, we have the victim's words, which leads us to a he said, she said. So what's the foundation on which the district court can make a reliability determination if that's the picture in front of us? Sure. So I think two things. First, I would go back to the defendant's actual objection, which was not to the reliability of the evidence. But he's allowed to make his arguments. He's preserved his objection. He's allowed to make his arguments on appeal about why it was incorrect to rely on these things. So here we are. We're here today. Okay. Your Honor, if that's the case, then what I would say is that the minor witness deposition is different than just a he said, she said statement. The minor witness deposition was subject to cross-examination, and she was, in fact, cross-examined by defense counsel at the time. It's sworn, and it was submitted to the court. And again, defendant provided nothing that said otherwise, even a small amount of evidence. He was just objecting to the fact that he wasn't convicted of a sex crime. Again, not to the credibility of that evidence. So I think that is different in this case. And the fact that because of the preponderance standard that this was a sworn and, again, cross-examined by defense counsel at the time's deposition, that is different. I would also note that in the defendant's initial brief, they stated on page 13 that a victim affidavit may be sufficient to have met this. And then when it was brought up in the government's brief that, in fact, we went beyond a victim affidavit, there was actually sworn deposition testimony subject to cross-examination, that kind of idea was dropped. So I think that the deposition should be acceptable under the federal rules of evidence. In a civil proceeding, that could be relied upon if a victim was unavailable or otherwise unable to testify. And so here it was appropriate for the court to rely upon that. But, again, our position would still be that this bare assertion did not shift the burden in the first place. Sorry, Your Honor. Can you turn to the lewd assault? Yes. And so to the last two, that's victim KO, and that was the acquitted conduct. Again, his objection was that he was acquitted, and I think is undisputed. Acquitted conduct can be considered, so I don't think that that, again, is enough of an objection. However, at the sentencing, he did state that this was, you know, she had inconsistencies in her deposition to her letter. So what I would say is that, again, he has not brought forth any evidence to show that this is more than just a bare denial of this didn't happen. This is different than the Helding case where it's a CI. We have named victims. These are known parties. I'm a little bit concerned about this because why is the lewd assault victim's testimony and impact statement enough to meet the preponderance of the evidence standard if it requires us to assume the jury believed her even though they acquitted him? We don't know what's behind that acquittal. Correct, Your Honor. And I would say that, first, I don't think it requires the district court to make a finding that they believed her. It's the district court's finding based on that sworn deposition testimony. And in this case, we had KO, the actual victim's sworn deposition testimony. But if he hasn't seen anything else? And additionally, there was— The district court. If the district judge hasn't seen anything else from the trial. Sure. But the district court did. The district court also had Carolyn Ellis, which was a witness that was sworn deposition testimony that was provided to the court. And, again, beyond a reasonable doubt versus the preponderance standard is very different here. So the court did evaluate those things. The government did provide those sworn deposition testimony. And, again, those were subject to cross-examination by defendant. So these were different than just maybe a generic letter. And I would note, in the defendant's initial brief, they acknowledged that a victim affidavit could be enough in these cases. Well, this is well beyond a victim affidavit in these cases. I would also note, in the Helding case, that this court specifically says, while it may not be a bad idea, that there is not a requirement that a judge personally hear from the witness under oath. In this case, the witness was under oath. Obviously, it was not in person, but that the court did hear sworn testimony that was subject to cross-examination. Unless the court has any additional questions, I would rest on my brief. Thank you, Your Honors. Thank you, Counsel. Anything further, Mr. Hillis? The government refers to the Ellis testimony. It's not referenced in its brief, so I don't know how further to respond to that. I don't see the district court relied on it either, for that matter. The government has said in its brief, and now you're going to oral argument, that one event is enough to establish a pattern. I don't know any authority for that. The government hasn't cited any either. As for whether there are separate occasions, there's a lot of chatter about separate occasions ever since the Wooden analysis came out. If we have the PSR that references one victim, perhaps one day, one place, I'm not understanding how under Wooden that we could say, with similar language in the guideline, that we have a separate occasion here that we could credit the government's position on that. Government is repeatedly trying to shift the burden onto the defendant here to say, the defendant didn't say more, the defendant didn't produce anything, the defendant should have done the following. That is not how it works. It is the government's burden to produce the information once there is an objection that puts the information in equipoise, and it triggers then a reliability determination by the district court judge. None of that happened. The defendant doesn't have to offer anything more, and a pro se defendant who's challenging the guideline is implicitly challenging the facts. Whatever the basis is, and we're allowed to make a gloss on an argument for the purposes of the appeal, I think that it's well preserved here under these circumstances. The victim, finally, they were not unavailable. The government knew who they were, so you can't say we can bring in the deposition transcript because the witness was unavailable. The government has repeatedly acknowledged that the witnesses were available. They had their names, addresses, et cetera, just chose not to present them. So lastly, there's no lewd image that is produced at my client's request when my client hasn't asked for it, it's just sent. Thank you. The case is taken under advisement.